[No. 7289.   Decided August 22, 1908.]

# W. P. TOWNSEND *et al.*, *Appellants*, v. SIG. DILSHEIMER *et al.*, *Respondents.*[1]

PRINCIPAL AND AGENT—EMPLOYMENT—VENDOR AND PURCHASER—FRAUD—EVIDENCE—SUFFICIENCY. The evidence is insufficient to show that the plaintiffs, the vendors in a written contract of sale of mining claims for $10,200, had employed the defendants to act as their agents in effecting a sale for $10,000, agreeing to pay a commission, and that they were induced through fraud to execute the contract to one of the defendants to enable them to negotiate a sale, when the agents in fact were making a sale for $60,000, where it appears that the contract was an unambiguous one to sell the property to one of the defendants within two years upon the payment of installments, and there were no circumstances justifying an inference that the real agreement differed from the writing, which must accordingly conclude the parties; and the fact that in about a year the vendee in the contract was enabled to make a sale of the claims, with others, for $60,000 is immaterial.

Appeal from a judgment of the superior court for Stevens county, Chapman, J., entered November 29, 1907, in favor of the defendants, after a trial on the merits before the court without a jury, dismissing an action for an accounting and the appointment of a receiver. Affirmed.

*Slater & Allen*, for appellants.

*Voorhees & Voorhees, W. H. Jackson* and *Wakefield & Witherspoon*, for respondents.

HADLEY, C. J.—This action was originally brought by Townsend, Reynolds, and Wingham, against Dilsheimer and Ehrlich, to recover what the plaintiffs claim is their proportionate share of $60,000 as the proceeds of the sale of certain mining claims located in Stevens county, Washington. Dilsheimer was a part owner of the claims with the plaintiffs, and with two others, Talbott and Wurzburg. Afterwards Talbott, Wurzburg, and the British Columbia Copper Com-

[1]Reported in 97 Pac. 53.

pany, Limited, were brought into the case as parties defend-
ant. It is alleged that the plaintiffs were wholly ignorant of
the market or actual value of the property and had no knowl-
edge thereof, except such as they obtained from Dilsheimer
and Ehrlich; that the latter were well acquainted with the
property, and from personal examination thereof well knew
its actual and market value; that Dilsheimer and Ehrlich,
knowing of the ignorance of the plaintiffs as to the actual
value of the property and relying thereon and knowing that
the claims were of the value of $60,000 and could be sold for
that sum, conspired together to cheat and defraud the plain-
tiffs of a large portion of their interests in their property;
that in pursuance of such conspiracy they represented to the
plaintiffs that they could procure a purchaser for $10,000,
which sum was all the property was worth and all that could
be obtained for it; that the statement was made for the pur-
pose of inducing the plaintiffs to employ Dilsheimer and Ehr-
lich as their agents with authority to sell the claims for
$10,000; that relying upon these statements, the plaintiffs did
employ Dilsheimer and Ehrlich as their agents to procure a
purchaser for $10,000, and promised to pay their said agents
a commission for making a sale at that price; that Ehrlich
was in the employ of P. Burns & Co., of Nelson, B. C.; that
he and Dilsheimer represented to the plaintiffs that, in order
to facilitate the consummation of the sale, the owners should
enter into a written agreement, giving Ehrlich authority to
transfer the property; that such an agreement was made, and
Dilsheimer and Ehrlich represented that P. Burns & Co. were
the purchasers; that thereafter by different payments the
plaintiffs received and accepted their respective shares of
$10,000 in cash as the selling price of the claims; that in
fact no sale was ever made to P. Burns & Co., but that a sale
was made to the British Columbia Copper Company, Limited,
at the price of $60,000, which sale the plaintiffs are willing to
approve and confirm, provided they receive their share of the

proceeds thereof. The appointment of a receiver for the property is asked and an accounting is demanded. The defendants Talbott and Wurzburg answered the complaint, admitting its allegations, and by way of cross-complaint they asked for themselves the same character of relief which the plaintiffs demanded in their complaint. Dilsheimer, Ehrlich and the copper company answered separately, each denying the material allegations of the complaint and cross-complaint. The cause was tried by the court without a jury, and resulted in a judgment dismissing both the complaint and cross-complaint. The plaintiffs and the cross-complainants Talbott and Wurzburg have appealed.

The errors assigned are that the court erred in dismissing the second amended complaint and the cross-complaint, and in rendering judgment against appellants. These assignments necessarily involve the whole evidence. We have read the record of the testimony, which is quite extensive, and we are satisfied that the judgment of the court is sustained thereby. The appellants, together with Dilsheimer, as owners of the claims, executed a written agreement to transfer two claims, the Napoleon and Bonaparte, to Ehrlich for $10,200. Two hundred dollars was paid at the time of the agreement, and it was provided that that sum should be used for the assessment work upon the claims, which was done. The balance of $10,000 was to be paid as follows: $2,500 in one year, $2,500 in eighteen months, and $5,000 in two years. The payments were all made from time to time, were accepted by the several owners, and the transfer was made. The written agreement was made with Ehrlich as an individual transferee, and not with him as agent for the owners sustaining a fiduciary relation to them, as alleged in the complaint and cross-complaint. The written agreement to transfer to Ehrlich is plain and unambiguous in all its terms. It was signed by each of the appellants in person. They were all fully apprised of its contents. No circumstances appear which jus-

tify evidence that the real agreement was different from that expressed in the writing. The rights of the .parties must, therefore, be determined by the written agreement. The fact, if it were true, that nearly a year after this agreement Ehrlich was able to sell the property to the British Columbia Copper Company, Limited, for $60,000 is not material to the appellants, who sold and received the price for which they at the time deliberately bargained. The evidence, however, shows that several other claims were included in the deal with the copper company which were not comprised in the transfer from appellants to Ehrlich. This may to some extent account for the larger selling price in the sale to the copper company. Appellants, however, urge that the additional claims were of little value. The evidence is in sharp conflict upon that subject. There was expert testimony to the effect that the additional claims are probably of much value, for the reason that it is believed that the veins of the Napoleon and Bonaparte claims dip without the side lines of those claims and cross into the others.

Upon the whole record of the evidence, we believe the judgment is right, and it is affirmed.

ROOT, CROW, and MOUNT, JJ., concur.

RUDKIN and FULLERTON, JJ., took no part.